UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 06-308-GWU


TIMOTHY M. GABBARD,                                                    PLAINTIFF,


VS.                           **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.


### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Gabbard

4.      Can the claimant's severe impairment(s) be expected to result
        in death or last for a continuous period of at least 12 months?
        If yes, proceed to Step 5.  If no, the claimant is not disabled.
        See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of
        impairments meeting or equaling in severity an impairment
        listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
        Impairments)?  If yes, the claimant is disabled.  If no, proceed
        to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a),
        416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity and the physical and mental
        demands of the work he has done in the past, still perform this
        kind of past relevant work?  If yes, the claimant was not
        disabled.  If no, proceed to Step 7.   See 20 C.F.R.
        404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity, age, education, and past work
        experience, do other work--i.e., any other substantial gainful
        activity which exists in the national economy?  If yes, the
        claimant is not disabled.   See 20 C.F.R. 404.1505(a),
        404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.  Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence.  Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Gabbard

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Gabbard

> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment. The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987). Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford
or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242
(6th Cir. 1990).

4

Gabbard

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

Gabbard

physical and mental impairments.   Varley   v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Timothy M. Gabbard, was found by an administrative law judge (ALJ) to have "severe" impairments consisting of lumbar strain with chronic back pain, right upper extremity radial nerve damage, a "12.08 personality disorder," a "12.07 somatoform disorder," and being status post anterior cervical discectomy and subsequent fusion.  (Tr. 24).  Nevertheless, based in part upon the testimony of a vocational expert (VE), the ALJ determined that Mr. Gabbard retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 24-31).

At the second of two administrative hearings, the ALJ asked the VE whether the plaintiff could perform any jobs if he were limited to "light" level exertion, with the ability to stand, walk, and sit six hours in an eight hour day, and also had the following non-exertional impairments.  (Tr. 485-6).  He: (1) could only occasionally push or pull or use hand controls with the right upper extremity; (2) could never climb ladders or ropes or crawl; (3) could occasionally balance, kneel, crouch, stoop or reach or work overhead with the right upper extremity; (4) had the mental capacity to perform simple, repetitive work tasks with infrequent and casual contact with others in an object-focused work environment without excessive productivity demands and (5) could adapt to routine, infrequent changes in an unpressured work

7

environment.  (Tr. 486).[1]  The VE responded that there were jobs that such a person

could perform, including bench assembler and assembly worker, and proceeded to

give the numbers in which they existed in the state and national economies.  (Tr.

486-7).

On appeal, this Court must determine whether the hypothetical factors

selected by the ALJ are supported by substantial evidence, and that they fairly depict

the plaintiff's condition.

Mr. Gabbard, whose work experience was as a farmer, alleged disability due

to problems with his right leg, right arm, and neck.  (Tr. 77, 462).  He had previous

surgery on his right knee, but said most of his current problems came from his neck,

for which he had disc surgery and a fusion.  (Tr. 460, 463-4).  He continued to have

pain in his neck and right arm pain and swelling.  (Tr. 460).  He felt the surgery had

helped his neck pain and headaches, but not his arm.  (Tr. 478).  Mr. Gabbard felt

that he could lift a maximum of 20 pounds, sit for one hour and walk for 10 minutes

and stand in one place 15-20 minutes.  (Tr. 470-1).  Psychologically, he stated that

he was irritable and did not like to socialize, although he was able to visit family.  (Tr.

472, 475).  He felt he did not need mental health treatment.  (Tr. 471).

---

[1]The ALJ also specified that the plaintiff suffered from a pain disorder and was over-reactive, self-centered, demanding, pessimistic, and exhibited antisocial traits.  (Tr. 486).

Gabbard

Medical records in the transcript show that the plaintiff underwent right knee surgery in September, 2000, almost two years before his alleged onset date. (Tr. 129). Apparently there was another surgery in approximately July, 2002. (Tr. 174). His physician, Dr. Darren Johnson, felt that Mr. Gabbard's complaints of pain were out of proportion to his physical findings, and felt that he was not being compliant with wearing a knee brace. (Tr. 173). When last seen, in January, 2003, Dr. Johnson noted no objective abnormalities, and apparently did not assess any restrictions. (Tr. 172).

The plaintiff sought treatment from a neurosurgeon, Dr. John Gilbert, beginning in January, 2002 for complaints of headaches, neck pain, and arm pain. (Tr. 354). An MRI of the cervical spine showed a protusion of the C5-6 disc with some spinal cord impingement (Tr. 348), and after a trial of injections and physical therapy, and another MRI (Tr. 340, 344) Dr. Gilbert's associate, Dr. Greg Wheeler, obtained EMG/NCV testing which showed some nerve damage; however, Dr. Wheeler did not feel it was coming from the neck. (Tr. 337, 339). However, after another MRI showed a large disc protusion with spinal cord and nerve compression at C5-6 (Tr. 424-5), Dr. Wheeler performed a discectomy and fusion with the insertion of a titanium plate at C5-6. (Tr. 417-19). After the surgery, in November, 2004, the plaintiff reported some improvement initially, but in 2005 was reporting a recurrence of his neck, shoulder and arm pain. (Tr. 407, 416, 428). New MRI scans showed only "post surgical changes." (Tr. 447-8). Dr. Wheeler ordered a new

9

Gabbard

EMG/NCV, which was evidently obtained in September, 2005 and showed bilateral carpal tunnel syndrome (Tr. 450). However, Dr. Wheeler did not mention the results on a followup visit in October, and noted that the plaintiff was stable and his activities of daily living were being improved. (Tr. 449).

The plaintiff asserts that the ALJ committed error in declining to accept a functional capacity assessment from Dr. Wheeler dated July 30, 2004. This assessment limits the plaintiff to sitting and standing about two hours in an eight hour day, which would be less than full-time work, in addition to having a restriction to stooping and crouching no more than 10 percent of the time and limiting grasping, turning, twisting, manipulating, and reaching to 25 percent of the time. (Tr. 385-8). The ALJ declined to accept these restrictions because they were given prior to the neck surgery performed by Dr. Wheeler in October, 2004, and because his postoperative treatment notes suggested improvement following the surgery. (Tr. 27-8). The ALJ followed the restrictions given by Dr. David Muffly, an orthopedic surgeon who examined the plaintiff on June 30, 2005. (Tr. 437). Dr. Muffly noted that Mr. Gabbard was able to remove his socks without difficulty, had normal reflexes, leg strength and sensation, and a normal straight leg raising test. (Tr. 438-9). Although his right knee had scars from surgery, it had a full range of motion with only mild grinding, no swelling, and no sign of residual instability. (Tr. 439). Dr. Muffly found a full range of motion of the fingers, wrists, elbows, and shoulders, normal strength, reflexes and sensation in the arms, and no evidence of tenderness

10

or spasm in the low back.  (Id.).  A cervical examination showed tenderness and some spasm, with a limitation on range of motion, but cervical spine x-rays showed the plate and screws to be in good position.  (Tr. 439-40).  Dr. Muffly diagnosed residual cervical pain and stiffness and mild residual right knee pain, but opined that Mr. Gabbard could perform light level exertion, would have no limitations on sitting, could stand or walk six hours in an eight hour day, never climb, occasionally balance, kneel, crouch, crawl, and stoop, and needed to avoid hazards.  (Tr. 443-6).  There would be no limitation on reaching or the use of his hands.

While the opinion of a treating physician is normally entitled to controlling weight when it is not inconsistent with the other substantial evidence, see, e.g., Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985), the ALJ cited reasonable grounds for discounting Dr. Wheeler's opinion in the present case, since it was given well before the cervical spine surgery.  There are also reasons to question the physician's limitations on sitting, given that an MRI of the lumbosacral spine showed only "minimal" degenerative disc disease (Tr. 345) and neither Dr. Gilbert or Dr. Muffly found significant abnormalities on physical examination of this area (Tr. 354, 439).[2]  Although he was a one-time examiner, Dr. Muffly conducted a detailed

_____

[2]The Sixth Circuit affirmed the rejection of a treating physician's opinion regarding a claimant's standing and walking abilities because the record contained no evidence indicating he had an impairment to his lower extremities. Warner v. Comissioner of Social Security, 375 F.3d 387, 391 (6th Cir. 2004).  In the present case, Mr. Gabbard had clear injuries to his neck and to his right knee, but it is not clear how either of these problems would have limited his ability to sit to only two hours per day, especially in light

Gabbard

orthopedic examination, and reviewed objective testing in the form of x-rays.  Since

his opinion was the only one given after the neck operation, and because of the

inconsistencies in Dr. Wheeler's opinion, substantial evidence supports the

acceptance of his opinion over that of the treating source.

　　　　The plaintiff's other argument is that the ALJ failed to consider the effect of

his impairments in combination, but a review of the ALJ's decision shows that his

reasoning was adequate in this regard.  (Tr. 26-30).  <u>Gooch v. Secretary of Health

and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987).[3]

　　　　The decision will be affirmed.

　　　　This the 14th day of May, 2007.



**Signed By:**

<u>**G. Wix Unthank**</u>

**United States Senior Judge**

---

of his statements that he spent much of his time watching television.  (Tr. 227, 431).

　　　[3]The plaintiff makes no specific argument regarding the mental restrictions, but the Court notes that the restrictions were essentially consistent with those given by an examining source, Annette Freel (Tr. 230), and that the ALJ was not obligated to accept the more restrictive of another one-time examiner, Dr. David Atcher (Tr. 435-6).